IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ALGASSIMU JAH,

    Petitioner,

vs.                                        Case No. 4:11cv370-RH/WCS

ERIC H. HOLDER, et al.,

    Respondents.

                                  /

## REPORT AND RECOMMENDATION

Petitioner, proceeding *pro se*, initiated this case on August 3, 2011, by filing a § 2241 petition for writ of habeas corpus. Doc. 1. Petitioner is a native and citizen of Sierra Leone, and contends he has been detained in immigration custody since December 28, 2009, while awaiting removal. *Id.* The order of removal became final on April 16, 2010. *Id.*, at 4. Petitioner contends that Sierra Leone refuses to issue travel documents to him and Respondents "refuse to release him even though they are unable to deport him and will be unable to deport him in the reasonably foreseeable future." *Id.*, at 2.

Respondents filed a response to the petition on October 11, 2011, asserting that Petitioner's continued detention is lawful because of Petitioner's continued refusal to cooperate with removal efforts. Doc. 17. Respondents have demonstrated that Petitioner has "refused to board three separate flights . . . arranged for him to return to Sierra Leone." *Id.*

Petitioner entered the United States of America on September 24, 1991, on a non-immigrant visa which authorized him to remain in America for six months. Doc. 17, ex. 1 (doc. 17-1). Petitioner overstayed his visa and was arrested in Orlando, Florida, on December 28, 2009. *Id.* On March 1, 2010, an Immigration Judge found Petitioner was removable for overstaying his visa, but rather than entering a removal order, the judge granted Petitioner the privilege of voluntary departure and he was ordered to depart by March 31, 2010. *Id.* When Petitioner failed to make arrangements to depart, ICE requested travel documents from the Consulate of Sierra Leone on March 30t, 2010, and granted Petitioner a 15-day extension of his voluntary departure deadline. *Id.* Petitioner failed to leave the United States and, consequently, the order permitting Petitioner's voluntary departure automatically became a final order of removal on April 16, 2010. *Id.*

Petitioner has steadfastly refused to cooperate with removal efforts. *Id.* On May 11, 2010, Petitioner was requested to provide his fingerprints, and he refused to do so, or provide his signature. Doc. 17, attachment B to ex. 1 (doc. 17-1, p. 6). Petitioner admitted to the Deportation Officer in a written statement on May 12, 2010, that he was refusing to assist in removal efforts and stated his intent to wait out the removal period

and force the government to release him.  *Id.*  Petitioner wrote on a detainee request form:

> If you want to deport me, you have to go all out to look for travel document.  I am not going [sic] help you find any travel document. It's you [sic] job as a deportation officer.  All I know is you don't have any choice but to released [sic] me after 90 days, on July 16.  I am going to wait as long as it takes. The burden is on you, is not on me.  I am just relaxing here, eat three times a day and watch T.V. my lawyer told me not to sign any document.

Doc. 17, attachment A to ex. 1 (doc. 17-1, p. 5).  On May 18, 2010, Petitioner was served with a Notice of Failure to Comply form.  *Id.*

On August 24, 2010, ICE received approval from Sierra Leone to return Petitioner to his native country.  Doc. 17, ex. 1.  Arrangements were made for Petitioner to depart unescorted on October 4, 2010, but Petitioner refused to board the airplane.  *Id.*  Petitioner was then rescheduled for a flight on October 29, 2010, and this time he would be accompanied by two ICE agents.  *Id.*  Again, Petitioner verbally and physically refused to board the airplane.  Doc. 17, attachment C to ex. 1 (doc. 17-1, p. 8).  The Captain of the aircraft then refused to have the "uncooperative detainee" board the flight.  Doc. 17, attachment D to ex. 1 (doc. 17-1, p. 9).  Due to his failure to cooperate, ICE determined Petitioner should not be released from custody pending his removal.  Doc. 17, attachment E to ex. 1 (doc. 17-1, p. 10).

The prior travel documents expired on November 2, 2010.  Doc. 17, ex. 1.  Sierra Leone issued a second travel document for Petitioner and he was scheduled for a third flight on February 25, 2011.  *Id.*  As occurred before, Petitioner refused to board the airplane.  *Id.*

In July, 2011, ICE began working on a third travel document for Petitioner. Petitioner was interviewed by the Consulate and stated that he would not return to Sierra Leone because he had a child in the United States.  *Id.*  The Consulate said it would need to contact its government regarding this case.  *Id.*  On September 26, 2011, ICE officials met with Sierra Leone Embassy staff to discus the pending request for Petitioner's third travel document.  Both governments are working together to return Petitioner to Sierra Leone.  *Id.*  Due to Petitioner's actions in thwarting his removal, Respondents maintain that Petitioner should not be released from custody.

Respondents have, therefore, demonstrated that Sierra Leone has issued two travel documents for Petitioner in the past.  Respondents have shown that Petitioner's removal is likely in the foreseeable future.

In reply, Petitioner has filed what is essentially a letter to the court.  Doc. 20. Petitioner asserts that "Respondents continued to detain Petitioner, even though they were unable to remove him to his native country . . . ." and he asserts his detention is "unlawful."  *Id.*, at 1.  Petitioner contends he has cooperated with removal efforts because he signed the I-229 papers, he went to an interview with the Consulate, and he contends he "went to the airport to effect his removal."  *Id.,* at 1-2.  Yet, Petitioner also acknowledges that Respondents are correct when they state that he "refused to board" three separate flights to return to Sierra Leone.  Petitioner points to his "brief" filed in support of his § 2241 petition as explaining his actions.  *Id.*, at 2, citing to doc. 1, pp. 10-13.  Petitioner requests that he be released under <u>Zadvydas</u> and put an end to his indefinite detention.  *Id.*, at 2.

**Analysis**

The Supreme Court held that an alien's post-removal-period detention is limited to "a period reasonably necessary to bring about that alien's removal from the United States." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 689, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001).  For the "sake of uniform administration in the federal courts," the Court held that six months is a presumptively reasonable period of time to detain an alien awaiting removal.  *Id.* at 701, 121 S.Ct. at 2505.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government" may be called on "to rebut that showing."  *Id.* at 701, 121 S.Ct. at 2505.  If the petition fails to show prolonged detention of at least six months, the petition may be dismissed.  <u>Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1052 (11th Cir. 2002) (holding that the "six-month period thus must have expired at the time [the]§ 2241 petition was filed in order to state a claim under Zadvydas."). Here, Petitioner has been in detention for one year and eight months *after* the removal order became final (when he failed to voluntarily depart the United States). Petitioner meets the first part of the requirement under <u>Zadvydas</u> because he has been in prolong detention for at least six months.  However, the evidence reveals that Petitioner has failed to make the required showing as to the second part as required by <u>Zadvydas</u>: that he has good reason to believe there is no significant likelihood" of his removal in the reasonably foreseeable future.  Tthe Supreme Court held in <u>Zadvydas</u> that after the presumptive six-month period, "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' "  <u>Clark v. Martinez</u>, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d

734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Under that clear language, Petitioner is *not* eligible for conditional release because he has not shown that removal is not foreseeable.  The *only* reason Petitioner's removal has not already occurred is because of Petitioner's own efforts to thwart his removal.  The evidence here is undisputed and reveals that on three separate occasions, Petitioner could have been removed.  Petitioner refused to board the aircraft and prevented his own removal.

Under 8 U.S.C. § 1231(a)(1)(A), the government has a 90-day period of time to remove an alien.  However, the removal period "*shall be extended* beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires *or acts to prevent the alien's removal* subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C) (emphasis added).  Thus, the statute expressly permits an alien to be detained longer than the presumptive removal period where the alien acts or conspires to prevent his removal.  Here, Petitioner's removal has been extended by Petitioner's own efforts, and it is lawful.

In Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000),[1] the court denied habeas relief where the Petitioner was found to be "the cause for the long delay."  The court concluded that "an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials."  Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d at 221.

In Powell v. Ashcroft, 194 F.Supp.2d 209 (E.D.N.Y. 2002), a case decided in the wake of Zadvydas v. Davis, the court noted that Zadvydas was concerned with the

---

[1] This case was decided before Zadvydas.

constitutionality of § 1231(a)(6) where aliens were in " ''deportation limbo because their countries of origin had refused to allow [them] entrance.' " Powell, 194 F.Supp.2d at 211, *citing* Sango-Dema, 122 F.Supp.2d at 221 (explaining Zadvydas). Zadvydas is, thus, inapplicable to the case it bar because it was not concerned with prolonged detention because of "an alien's non-cooperation." Powell, 194 F.Supp.2d at 212, *citing* Guner v. Reno, 2001 WL 940576 (S.D.N.Y. Aug. 20, 2001); *see also* Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D.Pa. July 1, 2002) (finding the case factually distinguishable from *Zadvydas* where "Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002)(holding that petitioner's nearly five years in the custody of INS was constitutional following *Zadvydas* because the continued detention was lengthened largely because of petitioner's own actions); *cf.* Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D.D.C. July 22, 2002) (rejecting respondent's argument that petitioner "has not cooperated in obtaining travel documents because he told Liberian officials that he did not want to return to Liberia" and noting that INS had not argued that "petitioner refused to request travel documents or refused to be interviewed by Liberian officials" and did not deny "his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents."). In another case, Pelich v. I.N.S., 329 F.3d 1057 (9th Cir. 2003), the court found that petitioner's detention was "indefinite only because he refuse[d] to cooperate with the Immigration and Naturalization Service's ("INS") efforts to remove him." Pelich,

329 F.3d at 1057.  In such circumstances, the court concluded that the petitioner had "no cause to complain" and the denial of his § 2241 habeas petition was affirmed.  329 F.3d at 1057-58.

In this case, Petitioner has failed to demonstrate his entitlement to relief under Zadvydas because he cannot provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Petitioner is hindering his removal and his detention is prolonged because of his own actions.  Petitioner cannot be heard to complain of the delay in his removal when he is the cause of the delay.

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus, doc. 1, filed by Algassimu Jah pursuant to 28 U.S.C. § 2241, be **DENIED** because Petitioner has acted to prevent his removal from the United States.

**IN CHAMBERS** at Tallahassee, Florida, on December 28, 2011.


　　　　　　　　　　　　　　　　 S/    William C. Sherrill, Jr.
　　　　　　　　　　　　　　　　**WILLIAM C. SHERRILL, JR.**
　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**